UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAVON CROCKETT-BERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-02539-JMS-MJD |
| ) | |
| FALCONER, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Javon Crockett-Berry, who is incarcerated by the Indiana Department of Correction ("IDOC") alleges in this lawsuit that, when he was confined at New Castle Correctional Facility ("NCCF"), his bedding was taken, he was retaliated against, and his hot water pass was discontinued. After the Court's screening of the complaint, and summary judgment on the defense that Mr. Crockett-Berry failed to exhaust his available administrative remedies, the only claim that remains is Mr. Crockett-Berry's claim that Dr. Falconer wrongly discontinued his hot water pass in violation of his Eighth and First Amendment rights. Dr. Falconer has moved for summary judgment on this claim and, despite multiple extensions of time, Mr. Crockett-Berry has not responded. For the reasons that follow, Dr. Falconer's motion for summary judgment is **GRANTED**.

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment,

the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. Crockett-Berry failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Dr. Falconer has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Crockett-Berry and draws all reasonable inferences his favor. *Khungar*, 985 F.3d at 572–73.

During the relevant time, Dr. Falconer worked for Wexford of Indiana as the Medical Director at NCCF. Dkt. 57-1 ¶ 4 (Falconer Aff.). Dr. Falconer spent most of his time seeing patients and prescribing treatment. *Id.* ¶ 3. Mr. Crockett-Berry testified he sued Dr. Falconer because he was informed that, at the request of correctional officers, Dr. Falconer agreed to discontinue his hot water pass. Dkt. 57-2 at 4 (Crockett-Berry Dep. at 12:12-21). He does not remember if the hot water pass was initially ordered for use on his arm or his leg. However, he would use the hot water for warm compresses. *Id.* at 6 (Crockett-Berry Dep., at 19:9-16).

Throughout late 2019 and 2020, Mr. Crockett-Berry would often complain of, and receive treatment for, shoulder pain. Dkt. 57-1 ¶ 6. Dr. John Nwannunu primarily handled this treatment, including by ordering Mr. Crockett-Berry a medical permit allowing him to receive access to hot water in the evenings. *Id.* ¶ 7; dkt. 57-4 at 4-5 (Medical Records). Dr. Nwannunu ordered such a permit on May 26, 2020. Dkt. 57-1 ¶ 7; dkt. 57-4 at 4-5, 20. Dr. Nwannunu saw Mr. Crockett-Berry again on June 11, 2020, for his shoulder pain complaints. Dkt. 57-4 at 18-20. At that time, Mr. Crockett-Berry had active prescriptions for Gabapentin and Prednisone. *Id.* Gabapentin is an anti-epileptic medication that in certain dosages is approved for and used for management of nerve pain. Dkt. 57-1 ¶ 8. Dr. Nwannunu next saw Mr. Crockett-Berry on July 21, 2020, this time for complaints of upper rib cage pain. Dr. Nwannunu ordered Naproxen 500 mg for 10 days. Dkt. 57-4 at 15-17.

The record reflects that Mr. Crockett-Berry submitted one grievance, in July of 2020, related to his hot water pass, in which he complained that a correctional officer harassed him about the pass. *See* dkt 57-3. The response stated that, when the officer questioned Mr. Crockett-Berry about being out at night (when no one was allowed out), Mr. Crockett-Berry stated he had a pass to get hot water. *Id.* The response further stated that the officer addressed the pass with "Wexford." *Id.*

Nursing notes indicate that a doctor discontinued Mr. Crockett-Berry's medical pass for evening hot water on July 21, 2020, because he had already been prescribed Naproxen that could work not only for his rib cage pain but also for shoulder pain. Dkt. 57-1 ¶ 10. Dr. Falconer does not remember issuing such an order or being involved in Mr. Crockett-Berry's medical care at that time, but he concedes that only he or Dr. Nwannunu could have made that order. *Id.* ¶ 10-11. Either way, Dr. Falconer does not believe that an evening hot water pass was medically required, rather than simply a comfort measure. *Id.* ¶ 11.

Mr. Crocket-Berry saw Dr. Nwannunu again on August 13, 2020, primarily focusing on shortness of breath, but Dr. Nwannunu did not order a warm water pass or any other treatment for the shoulder. Dkt. 57-4 at 12-14. Dr. Nwannunu again followed up with Mr. Crockett-Berry on August 27, 2020, focusing again on asthma, but did not order a hot water pass or any other intervention for the shoulder. *Id.* at 9-11.

According to his review of the records, Dr. Falconer's first face-to-face interaction with Mr. Crockett-Berry occurred on November 17, 2020, after Mr. Crockett-Berry had allegedly experienced an allergic reaction to something he ate. Dkt. 57-1 ¶ 14; dkt. 57-4 at 6-8. Dr. Falconer assessed him for a potential food allergy and ordered that he receive a citrus free diet out of an abundance of caution. *Id.* At this time, Mr. Crockett-Berry continued to have several active

4

prescriptions, including Gabapentin and Prednisone others. *Id.* According to the records, Mr. Crockett-Berry continued to see Dr. Nwannunu during the next several months. *See* dkt. 57-1 ¶ 15.

### III.
### Discussion

Mr. Crockett-Berry's claim is that Dr. Falconer exhibited deliberate indifference to his serious medical needs and retaliated against him when his hot water pass was discontinued.

**A. Deliberate Indifference**

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Dr. Falconer argues both that Mr. Crockett-Berry's need for a hot water pass was not a "serious medical need" and, even if it was, he was not deliberately indifferent to it. "'A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Eagan v. Dempsey*, 987 F.3d 667, 695 (7th Cir. 2021) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). It appears from the record that Mr. Crockett-Berry used the hot water pass

5

to manage shoulder pain. Even assuming that Mr. Crockett-Berry's pain is a serious medical need, there is no evidence that Dr. Falconer was deliberately indifferent to that need.

Deliberate indifference requires more than negligence or even objective recklessness. *Johnson*, 5 F.4th at 824. Rather, Mr. Crockett-Berry "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.,* 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted).

The Seventh Circuit has held that deliberate indifference occurs when the defendant:

- renders a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

Dr. Falconer testifies that the hot water pass was a comfort measure and not a medical necessity. Dkt. 57-1 ¶ 11. He also points out that Mr. Crockett-Berry was on pain medication at the time that should have been effective for his shoulder pain. *Id.* ¶ 19. Having failed to respond to the motion for summary judgment, Mr. Crockett-Berry has not designated evidence that Dr. Falconer was aware that he needed a hot water pass and canceled this pass in disregard of this need, rather than

6

through an exercise of medical judgment. Dr. Falconer is therefore entitled to summary judgment on Mr. Crockett-Berry's Eighth Amendment claim.

### B. Retaliation

To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 668, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

There is no dispute that Mr. Crockett-Berry's grievance was a protected First Amendment activity. But, even assuming that the discontinuation of the hot water pass would likely to deter future First Amendment activity, by failing to respond to the motion for summary judgment, Mr. Crockett-Berry has designated no evidence to allow a conclusion that Dr. Falconer was the one who discontinued the pass or, even if he was, he did so in retaliation for Mr. Crockett-Berry's grievance. "The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013); *cf. Nieves*

7

*v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (probable cause usually defeats retaliatory arrest claim but not if plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals who did not engage in the same sort of protected speech were not). Nonetheless, "[a]llegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999). Again, there is no evidence that Dr. Falconer discontinued Mr. Crockett-Berry's pass at all or that Dr. Falconer knew about his grievance. Further, while the pass was apparently discontinued shortly after Mr. Crockett-Berry's grievance, "[s]uspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Manuel*, 966 F.3d at 680 (cleaned up) (standing alone, fact that inmate's cell was shaken down nine minutes after he engaged in First Amendment protected activity could not create triable issue of fact as to retaliation claim because another, non-retaliatory motive existed. *Id.* at 680–81).

Because Mr. Crockett-Berry has designated no evidence to support a conclusion that Dr. Falconer discontinued his hot water pass in retaliation for his grievance, Dr. Falconer is entitled to summary judgment on his retaliation claim.

## IV.
## Conclusion

Dr. Falconer's motion for summary judgment, dkt. [55], is **GRANTED**. Judgment consistent with this Order, the Order granting Defendants' Jones and Worth's motion for summary judgment on the exhaustion defense, dkt. 44, and the screening order, dkt. 17, shall now issue.

**IT IS SO ORDERED.**

Date: 5/31/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

8

Distribution:

JAVON CROCKETT-BERRY
104054
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com